IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JONATHAN LOUIS RUTLEDGE          )
AIS, #242515,                    )
                                 )
          Petitioner,            )
                                 )
     v.                          )     CASE NO. 2:10-CV-242-TMH
                                 )            [WO]
                                 )
ROBERT NEILSEN, et al.,          )
                                 )
          Respondents.           )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION AND PROCEDURAL HISTORY

This case is before the court on a 28 U.S.C. § 2254 petition for habeas corpus relief

filed by Jonathan Louis Rutledge ["Rutledge"], a state inmate, on March 16, 2010.[1]  In this

petition and amendments thereto, Rutledge challenges a conviction for second degree arson

imposed upon him by the Circuit Court of Barbour County, Alabama on August 4, 2005.

The trial court sentenced Rutledge to twenty years' imprisonment on August 17, 2005.

Rutledge appealed his arson conviction, and the Alabama Court of Criminal Appeals

---

[1] Although the Clerk stamped the petition "received" on March 17, 2010, the law is well settled that a pro se inmate's petition is deemed filed the date it is delivered to prison officials for mailing.  *Houston v. Lack,* 487 U.S. 266, 271-272 (1988); *Adams v. United States*, 173 F.3d 1339, 1340-41 (11th Cir. 1999); *Garvey v. Vaughn*, 993 F.2d 776, 780 (11th Cir. 1993).  Rutledge executed the petition on March 16, 2010.  *Petition for Habeas Corpus Relief - Doc. No. 1* at 9. "Absent evidence to the contrary in the form of prison logs or other records, [this court] must assume that [the instant petition] was delivered to prison authorities the day [Rutledge] signed it...."  *Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001). In light of the foregoing and as conceded by the parties, the court considers March 16, 2010 as the date of filing.

affirmed this conviction by memorandum opinion on May 19, 2006. This opinion, in

pertinent part, reads as follows:

> Rutledge contends that the evidence was insufficient to sustain his conviction because, he says, the State failed to prove that he intentionally set the fire that formed the basis for the arson charge. Rutledge challenged the sufficiency of the evidence in his motions for a judgment of acquittal made at the close of the State's case and at the close of all the evidence.

> The evidence adduced at trial indicated the following. Rutledge owned a large commercial building known as the "Quick Freeze" in Clayton. On the evening of February 23rd, Ken Killingsworth, the Fire Chief of the Clayton Fire Department, was contacted regarding a fire at this location. Chief Killingsworth testified that when he arrived at the scene the whole building was involved in heavy fire and smoke; that the fire seemed suspicious; and that he contacted the Alabama State Fire Marshall's Office regarding the suspicious nature of the fire.

> Scott Pilgreen, an employee at the Alabama State Fire Marshall's Office, testified that he assisted in the investigation of the fire at the Quick Freeze; that the building was a large concrete-block commercial structure with a combination roof made of metal, wood, and other materials, and a concrete slab floor; and that it contained very little combustible contents. Pilgreen testified that the concrete slab on which the building sat had a lot of deep, unusual spalling or breaks in the concrete that sometimes indicates the presence of an accelerant, and that debris and soil samples were taken from the areas where the spalling occurred. Pilgreen stated that he requested a dog trained to detect accelerants to sniff the scene; that the dog alerted in a couple of areas; and that debris samples were taken from those areas. Pilgreen said that one sample tested positive for gasoline and a second sample tested positive for a heavy petroleum product. Pilgreen testified that he ruled out accidental or electrical causes for the fire and concluded that the fire was the result of arson.

> Todd Register, an employee at the Alabama State Fire Marshall's Office, testified that he also found deep spalling in the concrete that formed some type of ... "pour patterns" and that there was not anything in the building that contained any kind of flammable liquid. Register stated that he had a conversation with Rutledge during which Rutledge was very vague and seemed to not want him at the scene. He testified that Rutledge stated that he

did not understand why they were there, and that he said "he just didn't want to say anything that he felt like could incriminate him down the road." Register also testified that he ruled out accidental, electrical, or natural causes for the fire.

Gerald Carroll, who is self-employed in the construction and real estate business, testified that Rutledge asked him to list the Quick Freeze building on the market for $60,000; that it did not sell; that he loaned Rutledge $52,000; and that the loans were secured by several mortgages on the Quick Freeze property. The loans were to be repaid when the building was sold.

Jason O'Rear, a commercial insurance agent for Nesbutt and Associates, testified that he wrote an insurance policy for the Quick Freeze property with a building limit amount of $355,000 and with a business/personal property amount of $20,000.

Mack Houston, a deputy sheriff with Barbour County, testified that he saw Rutledge in front of the Quick Freeze on the morning of the day of the fire. David Gulledge, a forestry specialist for the Alabama Forestry Commission, testified that he lives close to the Quick Freeze; that he drove past the Quick Freeze three or four times a day; that he had not seen activity at the building for several months; but that on the night of the fire, he noticed that one of the outside flood lights was on.

The evidence also indicated that Rutledge talked to people about burning down the Quick Freeze on multiple occasions. Edward F. Caldwell, an employee of Brown's Heating and Cooling, gave a telephone deposition that was read into the record. Caldwell testified that he met Rutledge when he was sent to the Quick Freeze to pick up some restaurant equipment that his company had purchased; that during another encounter, Rutledge asked Caldwell to rent the Quick Freeze from him; that Rutledge proposed that "[Caldwell] move [the pool tables and video machines] in there, and [he will] leave the back door open, and we will burn down the building and get rid of this stuff, and we will collect some insurance money." Caldwell stated that after the building burned down, Rutledge came into the bar where Caldwell was employed, and said "you open your mouth, and I'm gonna kill your family". There was also evidence that Rutledge spoke with others about burning the Quick Freeze building, including Roy Glenn, Johnny Gordon, Priscilla Jones, and Timothy Anderson.

Marty Barbaree, a dirt mover/contractor, testified that the day after the fire he had a conversation with Rutledge about tearing down the burned-out

3

remains of the building and hauling it off.

Sharee Wells, an employee of the Alabama Department of Forensic Sciences, testified that she examined all of the fire debris and that in one of the samples she detected the presence of a heavy petroleum product that could have been charcoal starter, lamp oil, or kerosene. She also stated that she detected the presence of gasoline in one of the samples.

"'In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution.'" *Ballenger v. State*, 720 So. 2d 1033, 1034 (Ala. Crim. App. 1998), quoting *Faircloth v. State*, 471 So. 2d 485, 488 (Ala. Crim. App. 1984), aff'd, 471 So. 2d 493 (Ala. 1985). "'The test used in determining the sufficiency of evidence to sustain a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational finder of fact could have found the defendant guilty beyond a reasonable doubt.'" *Nunn v State*, 697 So. 2d 497, 498 (Ala. Crim. App. 1997), quoting *O'Neal v State*, 602 So. 2d 462, 464 (Ala. Crim. App. 1992). "'When there is legal evidence from which the jury could, by fair inference, find the defendant guilty, the trial court should submit [the case] to the jury, and, in such a case, this court will not disturb the trial court's decision.'" *Farrior v. State*, 728 So. 2d 691, 696 (Ala. Crim. App. 1998), quoting *Ward v State*, 557 So. 2d 848, 850 (Ala. Crim. App. 1990). "The role of appellate courts is not to say what the facts are. Our role ... is to judge whether the evidence is legally sufficient to allow submission of an issue for decision [by] the jury." *Ex parte Bankston*, 358 So. 2d 1040, 1042 (Ala. 1978).

"In reviewing a conviction based on circumstantial evidence, this court must view that evidence in the light most favorable to the prosecution. The test to be applied is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis but guilt, but

4

whether a jury might reasonably so conclude. *United States v. Black*, 497 F.2d 1039 (5th Cir. 1974); *United States v. McGlamory*, 441 F.2d 130 (5th Cir. 1971); *Clark v. United States*, 293 F.2d 445 (5th Cir. 1961).

* * *

"'The sanctity of the jury function demands that this court never substitute its decision for that of the jury. Our obligation is [to] examine the welter of evidence to determine if there exists any reasonable theory from which the jury might have concluded that the defendant was guilty of the crime charged.' *McGlamory*, 441 F.2d at 135 and 136."

*Cumbo v. State*, 368 So.2d 871, 874-75 (Ala. Crim. App. 1978).

Rutledge appears to challenge on appeal both the sufficiency of the evidence and the weight of the evidence. To the extent that he challenges the sufficiency of the evidence, suffice it to say that the evidence, albeit circumstantial, was more than sufficient to allow the jury to infer beyond a reasonable doubt that Rutledge intentionally burned the Quick Freeze building. To the extent that Rutledge challenges the weight of the evidence, we note that this issue was not raised in a motion for a new trial and, therefore, is not properly before this Court. In any event, all credibility determinations were for the jury. This Court will not reweigh the evidence.

* * *

*Respondent's Exhibit C - Doc. No. 22-3* at 1-6 (citations to record omitted).

Rutledge filed an application for rehearing which the Alabama Court of Criminal Appeals initially denied on June 16, 2006. *Respondents' Exhibit D - Doc. No. 22-4*. Rutledge did not timely file a petition for writ of certiorari with the Alabama Supreme Court and the appellate court issued a certificate of judgment on July 6, 2006. *Respondents' Exhibit E - Doc. No. 22-5*. However, on August 8, 2007, Rutledge submitted

a motion for out of time petition for writ of certiorari.  *Respondents' Exhibit F - Doc. No. 22-6.*  The Alabama Court of Criminal Appeals denied this motion on October 2, 2006.  *Respondents' Exhibit G - Doc. No. 22-7.*  On October 13, 2006, the Alabama Court of Criminal Appeals issued an order "that the appellant's motion to vacate conviction and sentence is DENIED.  This case is placed on rehearing ex mero motu and the certificate of judgment is hereby recalled. The application for rehearing is hereby overruled."  *Respondents' Exhibit H - Doc. No. 22-8.*  Rutledge did not seek certiorari from this order and the Alabama Court of Criminal Appeals issued the certificate of judgment constituting finality of judgment on November 6, 2006.  *Respondents' Exhibit I - Doc. No. 22-9.*

Pursuant to the orders of this court, the respondents filed an answer, supplemental answers and supporting evidentiary materials in which they argue the instant federal habeas petition, as amended, is barred by the one-year period of limitation applicable to 28 U.S.C. § 2254 petitions. 28 U.S.C. § 2244(d)(1).[2]  The respondents contend that because Rutledge's second degree arson conviction became final after the effective date of the statute of limitations Rutledge must have filed his § 2254 petition within a year of this conviction becoming final, exclusive of the time that any properly filed state post-conviction action related to the conviction remained pending in the state courts.  The respondents concede that Rutledge filed a state post-conviction petition pursuant to Rule

---

[2] Subsection (d) was added by the Anti-Terrorism and Effective Death Penalty Act of 1996 (the "AEDPA"). This Act became effective on April 24, 1996.

6

32, *Alabama Rules of Criminal Procedure*, on February 8, 2007 which tolled the limitation period.[3]  However, the respondents maintain that even allowing tolling of the federal limitation period during the pendency of this Rule 32 petition the limitation period expired prior to Rutledge filing this federal habeas petition.  *Respondents' Answer - Doc. No. 22 at 19-21; Moore v. Crosby*, 321 F.3d 1377, 1381 (11th Cir. 2003) (statutory tolling allowed only for the time during which a properly filed state post-conviction action is pending).  The respondents further argue and well settled federal law directs that the writ to vacate conviction filed in the Circuit Court of Barbour County on February 5, 2010, a writ the parties agree state law requires be treated as a Rule 32 petition, *see* Rule 32.4, *Alabama Rules of Criminal Procedure*, had no affect on the running of the limitation period as Rutledge failed to file this writ/petition within the one-year period of limitation prescribed by Rule 32.2(c), *Alabama Rules of Criminal Procedure.  Respondents' July 12, 2010 Response - Doc. No. 56* at 3-4 (Rutledge's second degree arson "conviction became final

---

[3]The Rule 32 petition establishes that Rutledge executed the petition on February 8, 2007, and this date is therefore the earliest date on which Rutledge could have submitted the petition to prison officials for mailing. *Respondents' Initial Exhibit O - Doc. No. 26-1* at 37.  As previously noted, a pro se inmate's petition is deemed filed in federal cases the date it is delivered to prison officials for mailing.  *Houston*, 487 U.S. at 271-272.  "Alabama courts have [adopted the mailbox rule and] held that a pro se incarcerated petitioner/appellant is considered to have 'filed' a Rule 32 petition, a notice of appeal, or a petition for a writ of certiorari when those documents are given to prison officials for mailing."  *Ex parte Allen*, 825 So.2d 271, 272 (Ala. 2002); *Holland v. State*, 621 So.2d 373, 375 (Ala.Crim.App. 1993) ("[A] pro se incarcerated petitioner 'files' a Rule 32 petition when he hands the petition over to prison authorities for mailing.").  Consequently, the prison mailbox rule applies to pro se Rule 32 petitions filed in the state courts of Alabama and February 8, 2007 is therefore the appropriate date of filing for Rutledge's initial Rule 32 petition.  In addition, the court applies the mailbox rule to the subsequent post-conviction action filed by Rutledge on February 5, 2010, i.e. writ to vacate conviction, challenging his arson conviction.  *Respondents' Second Exhibit O - Doc. No. 87-1* at 1-4.

on November 6, 2006, when the Court of Criminal Appeals reissued the Certificate of Judgment.  This 'writ' filed by Rutledge on February [5], 2010, was filed more than one-year after the date his conviction became final, and was untimely ... and, therefore, not properly filed for purposes of statutory tolling of the federal limitation period under 28 U.S.C. § 2244(d)(2)."); *Pace v. DiGuglielmo*, 544 U.S. 408, 417, 125 S.Ct. 1807, 1814 (2005) ("For purposes of determining what are 'filing' conditions, there is an obvious distinction between time limits, which go to the very initiation of a petition and a court's ability to consider that petition, and the type of 'rule of decision' procedural bars at issue in *Artuz [v. Bennett*, 531 U.S. 4, 121 S.Ct. 361, 148 L.Ed.2d 213 (2000)], which go to the ability to obtain relief....  [I]t must be the case that a petition that cannot even be initiated or considered due to the failure to include a timely claim is not 'properly filed.'...  For these reasons, we hold that time limits, no matter their form, are 'filing' conditions.  [A state post-conviction action which is] untimely, ... was not 'properly filed,' and [petitioner is not entitled to statutory tolling of the limitation period] under § 2244(d)(2)."); *Allen v. Siebert*, 552 U.S. 3, 128 S.Ct. 7, 4 (2007) ("When a postconviction petition [or equivalent writ] is untimely under state law, 'that [is] the end of the matter' for purposes of [statutory tolling of the limitation period under] § 2244(d)(2)."); *Sweet v. Secretary, Department of Corrections*, 467 F.3d 1311, 1317 (11th Cir. 2006) (An untimely collateral motion "was not 'properly filed' under § 2244(d), and it could not toll the federal one-year period of

8

limitation.").[4]   Hence, the respondents maintain Rutledge failed to file the instant § 2254 petition prior to expiration of the one-year period of limitation.

Based on the foregoing, the court entered orders advising Rutledge that he failed to file his federal habeas petition within the one-year limitation period established by 28 U.S.C. § 2241(d)(1) and provided Rutledge opportunities to show cause why his habeas petition should not be barred from review by this court as untimely filed.  *Order of May 18, 2010 - Doc. No. 27*; *Order of July 13, 2010 - Doc. No. 59*.  In his numerous responses to these orders, Rutledge maintains that he is actually innocent of arson because he presented an alibi defense indicating he was not present at the scene of the fire directly preceding the time witnesses initially observed the fire nor at the time authorities first received calls reporting the fire.  Rutledge argues that purported "911 tapes of the calls that reported the fire ... could have and would have supported the alibi defense [presented at trial through testimony of Rutledge, Will Grubbs and Rita Wilson] that when the fire was called in or reported to 911 Rutledge was, in fact, at home with 2 witnesses and therefore could not have started or maintained any fire."  *Respondents' Exhibit J (Rule 32 Brief on Appeal) - Doc. No. 22-10* at 9, adopted by petitioner as amendment to argument in support of actual innocence argument (Doc. No. 40); *Petitioner's Response - Doc. No. 43* (alleged 911 tapes

---

[4] Even if the court construed the writ to vacate as a motion in arrest of judgment under Rule 24.2 of the Alabama Rules of Criminal Procedure, the writ remains untimely and not properly filed as Rutledge did not file the writ within thirty days after pronouncement of sentence. Rule 24.2(b), *Alabama Rules of Criminal Procedure* (motion in arrest of judgment must "be filed within thirty (30) days after sentence is pronounced.").

would have supported testimony from alibi witnesses that Rutledge was home with them at the time the fire was reported).  In addition, Rutledge asserts that the State failed to present sufficient evidence showing that he "damaged a building by starting or maintaining a fire ... [and] failed to prove ... that there was intent to commit arson by the Petitioner...." *Petitioner's Response (Objection) - Doc. No. 98* at 1.  Rutledge likewise alleges that a photograph of an intact container located in the area of the fire, a container he asserts is the gas can for his lawn mower, demonstrates a possible innocuous source for the presence of the gasoline accelerant and seems to impeach the testimony from the fire marshal that he did not find a gas can within the remains of the building upon his initial inspection of the fire. *Petitioner's Response - Doc. No. 42* at 1.

In response to the respondent's argument that his petition is barred by the one-year period of limitation, Rutledge contends that he is entitled to equitable tolling of the limitation period as he had no knowledge of the federal period of limitation until issuance of the order of procedure in this case and the Camden Work Release Facility, his place of incarceration from June of 2007 until April 17, 2010, did not maintain a written copy of the AEDPA or federal rules. *Petitioner's Response - Doc. No. 49* at 1.  Rutledge also maintains that he should be allowed equitable tolling during his incarceration at the Camden Work Release Facility as this facility did not have a law library and officials failed to download the necessary program onto the computer system to create an electronic law

library for use by prisoners. *Id*. at 3. Finally, Rutledge asserts that he should be allowed equitable tolling from February 22, 2010, until March 16, 2010, because during this period of time he submitted inmate request slips seeking information from correctional officials regarding the balance of his inmate account, the weight of his habeas documents and notary service to which he received no responses. *Petitioner's Response (Objection) - Doc. No 95* at 1-2.[5]

Upon review of the pleadings filed by the parties, the undisputed state court record and applicable federal law, the court determines that no evidentiary hearing is required, Rule 8(a), *Rules Governing Section 2254 Cases in United States District Courts*, and concludes that the present habeas petition is due to be denied as Rutledge failed to file the petition within the applicable one-year period of limitation.

## II.  DISCUSSION

### A.  Actual Innocence - Independent Claim

To the extent that Rutledge argues he is entitled to federal habeas relief because he is actually innocent of second degree arson, the law is well settled "that '[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for

---

[5] The respondents deny Rutledge submitted the request slips to correctional officials as these documents are not contained in his prison file. *Respondents' Supplemental Response - Doc. No. 102-1 and Doc. No. 102-2 (Exhibits P and Q)*; *Respondents' Supplemental Response - Doc. No. 108-1 (Exhibit R)*. Because Rutledge did not make this particular argument regarding equitable tolling in his numerous responses seeking tolling of the limitation period but, instead, raised this argument in an Objection to a previous Recommendation that this petition be denied as time barred, the court finds the credibility of this assertion tenuous at best. Nevertheless, for purposes of this Recommendation, the court assumes Rutledge submitted the request slips to correctional officials.

federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding.' *Herrera v. Collins,* 506 U.S. 390, 400, 113 S.Ct. 853, 860, 122 L.Ed.2d 203 (1993).  It is not our role to make an independent determination of a petitioner's guilt or innocence based on evidence [presented at trial or] that has emerged since the trial.  'This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution--not to correct errors of fact.'  *Id.*"  *Brownlee v. Haley*, 306 F.3d 1043, 1065 (11th Cir. 2002); *Jordan v. Secretary Dept. of Corrections*, 485 F.3d 1351, 1356 (11th Cir. 2007) (federal habeas relief not available for free-standing, non-capital claims of actual innocence).  Thus, Rutledge is entitled to no relief from this court with respect to any independent claim of actual innocence.

### B.  Actual Innocence - Gateway to Excuse Time Bar

Throughout his pleadings, Rutledge maintains that he is innocent of second degree arson and his innocence serves as a "gateway" through which this court may consider his claims that are otherwise barred by the AEDPA's one-year limitation period.  In support of this claim, Rutledge relies on the alibi defense set forth at trial – i.e., that he could not have started or maintained the fire as he was with friends during the relevant period of time.  Rutledge further argues that a photograph showing an intact container located with some debris in the area of the fire, which he identifies as the gas can for his lawn mower,

provides evidence of a potential innocuous source for the gasoline accelerant found at the scene and contradicts testimony of the fire marshal that the marshal did not see a gas can within the frame of the building when he initially inspected the scene.[6]  In addition, Rutledge asserts that he is innocent because the evidence presented by the State failed to prove a prima facie case of arson as it not clearly establish that he started or maintained the fire and failed to demonstrate his intent to commit arson.

This court must determine whether Rutledge has made a showing of actual innocence before addressing whether the claims for federal habeas relief are barred by the statute of limitations. *Wyzykowski v. Department of Corrections*, 226 F.3d 1213, 1218 (11th Cir. 2000).  "To establish actual innocence, [a habeas petitioner] must demonstrate that ... 'it is more likely than not that no reasonable [trier of fact] would have convicted him.' *Schlup v. Delo*, 513 U.S. 298, 327-328, 115 S.Ct. 851, 867-868, 130 L.Ed.2d 808 (1995)." *Bousley v. United States,* 523 U.S. 614, 623 (1998).  "[T]he *Schlup* standard is demanding and permits review only in the '"extraordinary"' case." *House v. Bell*, 547 U.S. 518, 538, 126 S.Ct. 2064, 2077 (2006).  Thus, "[i]n the usual case the presumed guilt of a prisoner convicted in state court counsels against federal review of [untimely] claims." *Id*. at 537. "It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency. *See Sawyer v. Whitley*, 505 U.S. 333, 339, 112 S.Ct. 2514, 2518-

---

[6]It is clear to the court that if the gasoline can identified by Rutledge had been in the fire at the point where the gasoline accelerant was detected, the can would not have been intact after the fire.

2519, 120 L.Ed.2d 269 (1992)." *Bousley*, 523 U.S. at 623-624; *Doe v. Menefee*, 391 F.3d 147, 162 (2nd Cir. 2004) ("As *Schlup* makes clear, the issue before [a federal district] court is not legal innocence but factual innocence.").  *Schlup* observes that "a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare....  To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.  Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful."  513 U.S. at 324; *Rozzelle v. Secretary, Florida Dept. of Corrections*, 672 F.3d 1000, 1011 (11th Cir. 2012) ("[T]he alleged exception for AEDPA untimeliness would require the petitioner (1) to present 'new reliable evidence ... that was not presented at trial,' *Arthur [v. Allen*, 452 F.3d 1234, 1245 (11th Cir.), *modified*, 459 F.3d 1310 (2006)] (quoting *Schlup*, 513 U.S. at 324, 115 S.Ct. at 865), and (2) to show 'that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt' in light of the new evidence.  *Johnson [v. Florida Dept. of Corrections*, 513 F.3d 1328, 1334 (11th Cir. 2008)] (quoting *Schlup*, 513 U.S. at 327, 115 S.Ct. at 867); *see also House v. Bell*, 547 U.S. 518, 538, 126 S.Ct. 2064, 2077, 165 L.Ed.2d 1 (2006).").

    Rutledge's alleged alibi is the same argument which Rutledge presented at trial and

14

which the jury rejected. It is likewise clear that the alleged 911 tapes, if available, would not prove Rutledge's actual innocence of arson; rather, the tapes, at best, could only establish the time at which authorities received notice of the fire, when Rutledge maintains that he was at home with friends. In addition, the presence of a gas can belonging to Rutledge at the scene of the fire fails to show his actual innocence of arson. Moreover, the allegations regarding the State's failure to prove essential elements of the offense merely go to the sufficiency of and/or the weight afforded the evidence presented, issues decided adversely to Rutledge by the jury, and clearly fail to establish Rutledge's actual innocence of second degree arson. Consequently, these assertions do not constitute "new reliable evidence" of Rutledge's actual innocence and Rutledge fails to demonstrate any such evidence exists to establish his actual innocence so as to meet the standard set forth by *Schlup*. The instant petition for federal habeas corpus relief is therefore properly analyzed under the provisions of 28 U.S.C. § 2244(d)(1)(A).

## C. The Federal Period of Limitation

The Anti-Terrorism and Effective Death Penalty Act of 1996 became effective on April 24, 1996 and amended the habeas corpus statute to include a one-year period of limitation on petitions filed pursuant to 28 U.S.C. § 2254. This limitation period is codified at 28 U.S.C. § 2244(d) and provides that:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State

15

court.  The limitation period shall run from the latest of –

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

The statute clearly directs that the limitation period for filing a 28 U.S.C. § 2254 petition begins to run at the conclusion of direct review or upon expiration of the time for seeking direct review, whichever is later.  Where a petitioner preserves his right to file a petition for writ of certiorari in the United States Supreme Court, the statute of limitations is tolled during the ninety-day period in which such action may be undertaken.  *Coates v. Byrd*, 211 F.3d 1225 (11th Cir. 2000) ("A judgment does not become 'final by the conclusion of direct review or by the expiration of the time for seeking such review,' *see* 28 U.S.C. § 2244(d)(1)(A), until the Supreme Court has had an opportunity to review the case or the time for seeking review has expired.").  Accordingly, a state court judgment of

16

conviction becomes final under 28 U.S.C. § 2244 when the Supreme Court denies certiorari or the time to apply for certiorari expires. *Id.*

Pursuant to the verdict of a duly impaneled jury, the Circuit Court of Barbour County, Alabama convicted Rutledge of second degree arson on August 4, 2005. The trial court thereafter imposed sentence for this conviction. Rutledge filed a direct appeal of his conviction and sentence. On May 19, 2006, the Alabama Court of Criminal Appeals issued a memorandum opinion affirming Rutledge's conviction for second degree arson. *Respondents' Exhibit C - Doc. No. 22-3.* Rutledge sought rehearing and the appellate court entered the relevant order overruling his application for rehearing on October 13, 2006. *Respondents' Exhibit H- Doc. No. 22-8.* Rutledge failed to file a petition for writ of certiorari after issuance of this order and the Alabama Court of Criminal Appeals entered the certificate of judgment on November 6, 2006. *Respondents' Exhibit I - Doc. No. 22-9.*

Since Rutledge failed to pursue the direct appeal process fully, he relinquished his right to file a petition for certiorari with the United States Supreme Court. *Coates v. Byrd*, 211 F.3d 1225 (11th Cir. 2000), *cert. denied*, 531 U.S. 1166, 121 S.Ct. 1129 (2001); *see also* Rule 13.1, *Rules of the United States Supreme Court* (a petition for writ of certiorari to the United States Supreme Court may only be filed to review a judgment or order entered by a state court of last resort and must be filed within ninety (90) days of the action undertaken by the aforementioned state court). Thus, Rutledge's conviction for second

degree arson became final on November 6, 2006, upon entry of the certificate of judgment, and the one-year period of limitation contained in section 2244(d)(1)(A) began to run on November 7, 2006.[7]

   1. **<u>Statutory Tolling</u>**.  Title 28 U.S.C. § 2244(d)(2) provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section."  The court finds that the limitation period ran for 93 days after Rutledge's arson conviction became final until the filing of a Rule 32 petition in the Circuit Court of Barbour County on February 8, 2007.  *Respondents' Initial Exhibit O - Doc. No. 26-1* at 38.  This state post-conviction petition remained pending in the state courts until issuance of the certificate of judgment by the Alabama Court of Criminal Appeals on June 3, 2009.  *Respondents' Exhibit N - Court Doc. No. 22-14*.  At this time, Rutledge had 272 days remaining within which to timely file a federal habeas petition.  The record demonstrates that on February 5, 2010 Rutledge filed a second state post-conviction action challenging his arson conviction in the Circuit Court of Barbour County.  *Respondents' Second Exhibit O - Court Doc. No. 87-1* at 1-4.  However, as previously determined, *infra* at 7-9, the aforementioned second post-conviction challenge to the arson conviction did not toll the one-year period of limitation relevant to the filing of a federal

---

   [7] In computing the federal period of limitation, "exclude the day of the event that triggers the period[.]"  Rule 6(a)(1)(A), *Federal Rules of Civil Procedure*.

habeas petition, as Rutledge filed this state action after expiration of the limitation period mandated by state law.  *Pace*, 544 U.S. at 417, 125 S.Ct. at 1814; *Sweet*, 467 F.3d at 1317.[8]

In light of the foregoing, the court concludes that the tolling provision set forth in 28 U.S.C. § 2244(d)(2) is unavailing with respect to the second state post-conviction petition filed by Rutledge.  Thus, the federal limitation period began to run again on June 4, 2009, and, absent equitable tolling, the time allowed Rutledge for filing a federal habeas petition expired on March 2, 2010.

2.  **Equitable Tolling**.  Case law directs the limitation period "may be equitably tolled" on grounds apart from those specified in the habeas statute "when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable with diligence."  *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999); *see also Steed v. Head*, 219 F.3d 1298, 1300 (11th Cir. 2000); *Knight v. Schofield,* 292 F.3d 709, 711 (11th Cir. 2002).  "Equitable tolling will not be available in most cases, as extensions of time will only be granted if 'extraordinary circumstances' beyond a prisoner's control make it impossible to file a petition on time."  *Calderon v. United States District Court,* 128 F.3d 1283, 1288 (9th Cir.1997).  Equitable tolling applies only in truly extraordinary circumstances.  *Jones v. United States*, 304 F.3d 1035, 1039-1040 (11th Cir. 2002); *Drew v. Department of Corrections*, 297 F.3d 1278, 1286 (11th Cir. 2002).  "The

---

[8] Contrary to Rutledge's argument, the one-year period of limitation set forth in Rule 32.2(c) does not allow for tolling of this period during the pendency of a Rule 32 petition.

burden of establishing entitlement to this extraordinary remedy plainly rests with the petitioner." *Drew*, 297 F.3d at 1286; *see Helton v. Secretary for the Dept. of Corrections*, 259 F.3d 1310, 1313-1314 (11th Cir. 2001), *cert. denied*, 535 U.S. 1080, 122 S.Ct. 1965, 152 L.Ed.2d 1025 (2002).  The United States Supreme Court recently confirmed the AEDPA's one-year period of limitation "is subject to equitable tolling" but only when a petitioner "shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing."  *Holland v. Florida*, __ U.S. __, 130 S.Ct. 2549, 2562, 177 L.Ed.2d 130 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005)).

   To the extent Rutledge seeks equitable tolling due to (i) his limited legal knowledge and resulting lack of notice of the federal limitation period, (ii) lack of effective assistance from inmate law clerks, (iii) purported denial of access to legal materials at the Camden Work Release Facility, and (iv) alleged denials of requests for financial information and notary service from February 22, 2010, until March 16, 2010, he is entitled to no relief from this court as none of these arguments warrants equitable tolling of the one-year period of limitation.

   The law is well settled that an inmate's lack of legal knowledge, his failure to understand legal principles and/or the inability to recognize potential claims for relief at an earlier juncture do not constitute extraordinary circumstances sufficient to warrant

20

equitable tolling of the limitation period. *United States v. Sosa,* 364 F.3d 507, 512 (4th Cir. 2004) (*pro se* status and ignorance of the law do not justify equitable tolling); *Kreutzer v. Bowersox,* 231 F.3d 460, 463 (8th Cir. 2000), *cert. denied*, 534 U.S. 863, 122 S.Ct. 145, 151 L.Ed.2d 97 (2001) (lack of legal knowledge or legal resources, even in a case involving a *pro se* inmate, does not warrant equitable tolling); *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000), *cert. denied*, 531 U.S. 1194, 121 S.Ct. 1195, 149 L.Ed.2d 110 (2001) (petitioner's *pro se* status and ignorance of the law are insufficient to support equitable tolling of the statute of limitations); *Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir. 1999), *cert. denied*, 531 U.S. 1035, 121 S.Ct. 622, 148 L.Ed.2d 532 (2000) (ignorance of the law and *pro se* status do not constitute "rare and exceptional" circumstances justifying equitable tolling); *Smith v. McGinnis*, 208 F.3d 13, 17 (2nd Cir.), *cert. denied*, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 63 (2000) (petitioner's *pro se* status throughout majority of limitation period does not merit equitable tolling); *Turner v. Johnson*, 177 F.3d 390, 392 (5th Cir.), *cert. denied*, 528 U.S. 1007, 120 S.Ct. 504, 145 L.Ed.2d 389 (1999) (unfamiliarity with the legal process during the applicable filing period did not merit equitable tolling); *Wakefield v. Railroad Retirement Board*, 131 F.3d 967, 969 (11th Cir. 1997) (ignorance of the law "is not a factor that can warrant equitable tolling."). Moreover, this court cannot permit equitable tolling based on Rutledge's alleged lack of knowledge of the federal limitation period, as he had ample opportunity to gain this

21

knowledge prior to his incarceration since the AEDPA came into effect several years before his arson conviction.  In addition, Rutledge had ample opportunity to access the law libraries at other correctional facilities prior to his transfer to the work release facility.

To the extent that Rutledge asserts lack of knowledgeable inmate assistance as a basis for equitable tolling, this assertion fails to justify such tolling.  A petitioner has no right to legal assistance in a habeas action and, thus, neither the perceived need to rely nor actual reliance on the assistance of an inmate clerk establishes extraordinary circumstances necessary to excuse the untimely filing of a petition.  *See Whiddon v. Dugger*, 894 F.2d 1266, 1267 (11th Cir.), *cert. denied*, 498 U.S. 834 (1990) (poor advice from inmate law clerks during collateral proceedings will not establish petitioner's claim of cause for a procedural default as there is no right to legal counsel in such proceedings); *Marsh*, 223 F.3d at 1220 ("The fact that an inmate law clerk was assisting in drafting [pleadings] does not relieve [petitioner] from the personal responsibility of complying with the law.").  In addition, the voluminous pleadings and documents filed by Rutledge demonstrate he is more than capable of presenting the relevant facts, necessary elements and requisite arguments regarding his claims to this court.

With respect to Rutledge's claim challenging his access to legal materials while confined at the Camden Work Release Facility, neither an allegedly inadequate prison law library nor limited access thereto, standing alone, establishes extraordinary circumstances

warranting equitable tolling of the limitation period. *Felder*, 204 F.3d at 171; *Marsh*, 223 F.3d at 1220. Furthermore, this argument provides no basis for equitable tolling as the record demonstrates that during his confinement at the Camden Work Release Facility Rutledge, while acting *pro se*, filed numerous pleadings in his Rule 32 proceedings which contained lengthy and detailed arguments in support of his claims for relief. Rutledge vigorously litigated his Rule 32 claims in both the trial court and the Alabama Court of Criminal Appeals while confined at the Camden Work Release Facility. Rutledge also prepared and filed this habeas petition while confined at this facility. Thus, this assertion of equitable tolling is refuted by the *pro se* actions filed by Rutledge.

Rutledge next maintains he is entitled to equitable tolling while seeking financial information and notary service from correctional officials from February 22, 2010, until March 16, 2010. Rutlege contends that the filing of these requests demonstrates his exercise of diligence and the absence of responses constitutes an extraordinary circumstance denying him the opportunity to file a federal habeas petition during this 3-week time period. Under the totality of the circumstances of this case, these allegations do not warrant equitable tolling. It is undisputed that Rutledge, as early as February 5, 2010, had in his possession ***both*** an inmate account statement from December of 2009 and a form affidavit of substantial hardship, documents which could have been used in filing a federal habeas action. *Respondents' Second Exhibit O - Court Doc. No. 87-1* at 29-31.

Despite access to these documents, Rutledge did not file a federal habeas petition with this court at that time; instead, Rutledge chose to file a second post-conviction action in the Circuit Court of Barbour County, Alabama. *Id*. at 1-4.  In addition, the record demonstrates that Rutledge filed his federal habeas petition absent notarization with his own unilateral declaration under penalty of perjury, *Petition for Habeas Corpus Relief - Doc. No. 1* at 9, and this court accepted the petition for filing without subscription by a notary in accordance with well established federal law.  *See* 28 U.S.C. § 1746 ("Whenever ... any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same ..., such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form ...  If executed within the United States, its territories, possessions, or commonwealths:  'I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)'.").[9]  It is also clear that Rutledge could have initiated a federal habeas action

---

[9]Although Rutledge asserts that his "habeas petition ... was sign[ed] by [him] in front of a D.O.C. notary ... on March 16, 2010," *Petitioner's Response - Doc. No. 107* at 2, this assertion is refuted by the record as the petition does *not* contain the signature, seal or statement of a notary that execution of the petition was "sworn to a and subscribed" before a notary. *Petition for Habeas Corpus Relief - Doc. No. 1* at 9.  A thorough review of the petition and memorandum filed therewith likewise contain no evidence of notarization. *Id*. at 1-10; *Memorandum in Support of Petition - Doc. No. 1-1* at 1-2.

by filing only his habeas petition and *in forma pauperis* application, a total of sixteen pages, thereby negating the necessity of additional postage beyond that routinely provided by prison officials for legal mail.  The purported actions of Rutledge in submitting request forms from February 22, 2010, until March 16, 2010, fail to establish diligence during the several months prior to his initial request, nor do his actions demonstrate extraordinary circumstances which prevented the filing of a federal habeas action prior to expiration of the one-year period of limitation.

The record is devoid of any evidence indicating an "extraordinary circumstance" which "prevented" Rutledge from filing a timely habeas action in this court.  Instead, based on the similarity of the claims raised herein and those presented in the initial Rule 32 petition – an action which concluded with 272 days of the federal limitation period remaining – and the filing of a second state post-conviction action – an action filed over three weeks prior to expiration of the federal period of limitation which demonstrated Rutledge's ability to file a petition challenging his arson conviction at that time – it is clear that Rutledge, acting with reasonable diligence, could have filed his federal habeas petition prior to expiration of the one-year period of limitation.

3. **Expiration of the Limitation Period**.  Under the circumstances of this case, the one-year period of limitation contained in 28 U.S.C. § 2244(d)(1) expired on March 2, 2010.  Rutledge filed the instant petition for federal habeas relief on March 16, 2010. Rutledge has failed to demonstrate that this federal habeas petition should not be dismissed

as untimely filed.

## III.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The petition for habeas relief filed by Jonathan Louis Rutledge be denied as it was not filed within the one-year period of limitation mandated by 28 U.S.C. § 2244(d)(1).

2.  This case be dismissed with prejudice.

It is further

ORDERED that on or before August 13, 2012, the parties may file objections to the Recommendation.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981,

*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE, this 30th day of July, 2012.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE